
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

SCARLETT FAITH MCNEILLY,

        Plaintiff,

v.                                 CIVIL ACTION NO.   5:12-cv-04609

GREENBRIER HOTEL CORPORATION, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

    The Court has reviewed the Defendant *Greenbrier Hotel Corporation's Motion for Summary Judgment* (Document 106), the attached exhibits, the *Memorandum of Law in Support of Greenbrier Hotel Corporation's Motion for Summary Judgment* (Document 107), the *Plaintiff's Response in Opposition to Motion to Filed For Summary Judgment the Defendants* (Resp.) (Document 154),[1] the *Memorandum of Law in Support of Plaintiff Scarlett Faith McNeilly, Pro Se, Opposition to Motion Filed For Summary Judgment the Defendants* (Mem. Resp.) (Document 155), the attached exhibits, and the Defendant's *Reply Memorandum in Support of Defendant's*

---

[1] The Plaintiff included a list of thirty-eight (38) exhibits in support of her claims.   Several of the listed documents were attached to Document 155.   Many were not attached to either of the Plaintiff's filings in response to the Defendant's motion for summary judgment.   Taking into consideration the liberal pleading standards applicable to *pro-se* litigants, the Court has considered documents listed in the Plaintiff's response in opposition that are available on the docket, including the report from her expert, Fred DelMarva (Document 95); the *Plaintiff's Answers to Defendants Interrogatory Questions and Request for Production of Documents* (Document 118); the affidavit of Ronnie Napier (Document 118-1); portions of the deposition of Robert Mickey (Document 118-2); portions of the deposition of Amy Yates (Document 118-3); the Defendant's *Answers and Responses to Plaintiff's Second Set of Interrogatory Questions and Requests for Production of Documents* (Document 110-1); and the Defendant's *Answers and Responses to Plaintiff's First Set of Interrogatories and Second Set of Interrogatories and Requests for Production of Documents* (Document 110-1).

*Motion for Summary Judgment* (Document 157) and attached exhibits. For the reasons stated herein, the Court finds that the Greenbrier's motion for summary judgment should be denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff, Scarlett McNeilly, proceeding *pro-se*, initiated this action on August 22, 2012. (*See* Complaint, Document 1.) Pursuant to 28 U.S.C. § 636, the matter was referred to Magistrate Judge R. Clarke VanDervort for total pretrial management and submission of proposed findings of fact and recommendations for disposition. (Document 3.) Through two opinions granting motions to dismiss certain claims and certain named defendants, the sole remaining claim alleges negligence pertaining to premises against the Greenbrier Hotel Corporation. (*See* PF&R, Document 34, adopted in Document 39; and PF&R, Document 72, adopted in Document 91.)

This claim arose out of an incident that took place on August 23, 2010. Ms. McNeilly and a friend, Pat Butler, were guests at the Greenbrier from August 22, 2010, until August 25, 2010. (June McNeilly Depo., p. 33–40) (Document 106-1.) Ms. McNeilly states that when she attempted to shower on the morning of August 23, 2010, she slipped in the bathtub, fell outside the tub enclosure, and hit her head on the marble bathroom floor. (Mem. Resp. at 4).) Prior to beginning her shower, she noted that there was no bath mat, either already in the tub or in the cabinet, nor were there rubber strips lining the tub. (June McNeilly Depo. at 53–59.) She asserts that she adjusted the water, entered the tub enclosure, stepped forward to adjust the water again, and her feet flew out from under her. (*Id.* at 54–56.) She attempted to grab the metal hand bar, but it was also wet, and the smooth metal was too slippery to grip. (*Id.*) She spun around inside the tub, and then fell "out over the tub 5 feet onto marble floor, [and] hit [her] head." (*Id.* at 56.)

2

The shower curtain was torn down as she fell. (Greenbrier Incident Report) (Document 155-1 at 74–75.) A security officer and nurse employed by the Greenbrier responded to the room and took Ms. McNeilly to the Greenbrier clinic. (*Id.*) Ms. McNeilly was later transported to the Emergency Room via EMS. (*Id.*)

Ms. McNeilly stated in her deposition that, upon her return from the emergency room, she checked the bathtub for residue from cleaning products that may have caused the tub to be slippery. (June McNeilly Depo. at 107–108.) She observed residue and believes the cleaning products were not adequately rinsed from the tub. (*Id.*) The Greenbrier points to the deposition testimony of Amy Yates, the housekeeping supervisor, who stated that the record of individualized key card entries shows that she entered the Plaintiff's room at 3:01 p.m., and again at 3:21 p.m., on August 22, 2010, to inspect the housekeeper's work prior to the guests' arrival. (Yates Depo. at 62–64) (Document 106-4.) She testified that she inspects bathtubs by wiping the surfaces of the tub and the fixtures with her hands to check for residue. (*Id.* at 65.) If there was residue, the room attendant would be required to re-clean the bathtub. (*Id.*) The Greenbrier was unable to identify the housekeeper who cleaned the Plaintiff's room prior to her arrival, so no direct testimony regarding the process used to clean the bathtub is available. (*See* Def.'s Interrog. Resp. 6) (Document 110-1.) Ms. McNeilly further referenced the affidavit of former housekeeping supervisor Ronnie Napier. (Document 118-1.) Mr. Napier stated that Robert Mickey, the Director of Housekeeping at all relevant times, began in February 2010 and made changes, including ending the prior practice of supplying rubber mats in all bathrooms and switching to cheaper chemicals for cleaning. (Napier Aff.) Some housekeepers brought in their own cleaning supplies after the latter change, though doing so was not permitted. (*Id.*)

3

It is undisputed that Ms. McNeilly's friend and roommate in the hotel, Ms. Butler, had showered on the evening of August 22, 2010, prior to Ms. McNeilly's shower and fall the following morning. (Butler Depo. at 26–28) (Document 106-5.) Ms. Butler states that she used only soap and did not shampoo her hair. (*Id.* at 89.) She does not recall anything unusual about her shower or the bathroom. (*Id.* at 35–36.)

The parties dispute the sufficiency of the anti-slip material in the bathtub. The Greenbrier's expert examined the bathtub and reports that the bottom surface was textured with abrasive rectangular inlays extending to about three inches from the drain. (Sapienza Rep. at 9–10) (Document 106-3.) He conducted testing and concluded that the textured area had a static coefficient of friction measurement of about three times the level required by industry standards. (*Id.*) Ms. McNeilly's expert, on the other hand, reports that "whatever etching was left on the bottom of the tub was approximately 6 to 8 inches from the drain." (DelMarva Rep. at 3) (Document 95.) Ms. McNeilly claims to have fallen when she stepped forward, presumably close to the drain, to adjust the water temperature. Mr. Napier stated that the anti-slip materials in some rooms were "extremely old....The non-slip etchings became smooth as the rest of the tubs over the years, and ineffective making the tubs really slick again when being cleaned." (Napier Aff.) He further stated that the new director of housekeeping hired in early 2010 ended a procedure by which rooms were temporarily placed out of order for repairs like painting, replacing wallpaper, and arching the tubs to remove soap scum and residue. (*Id.*)

Ms. McNeilly attached several accident report forms from prior slip and fall incidents in bathrooms at the Greenbrier. The Greenbrier's expert report references deposition testimony from several Greenbrier employees stating that the Plaintiff's fall was the first slip and fall in a

4

bathtub that they could recall, apparently to refute the Plaintiff's expert's opinion that similar falls were "not only foreseeable, but predictable and more likely than not [had] happened prior to the plaintiff's fall." (Sapienza Rep. at 10.) At least one of the prior incidents involved a guest slipping in the bathtub; others involved guests slipping on the tile floor after exiting the bathtub/shower enclosure. (*See, e.g.*, Nuemayer Accident Report; White Accident Report) (Document 155-1.)

Finally, Ms. McNeilly's expert produced a report in which he offers various opinions regarding the liability of the Greenbrier. The Greenbrier challenges the lack of supporting findings in the expert report, both in its motion for summary judgment and in a motion in limine.[2] The Court has reviewed the expert report carefully during its consideration of the motion for summary judgment and finds it to be largely speculative and conclusory in nature. Much of the analysis speaks to hotels in general, rather than the conditions at the Greenbrier. Based on the Court's review, the only relevant and admissible evidence that is not either generalized or entirely speculative is a statement that Mr. DelMarva, Plaintiff's expert, "observed the tub in the plaintiff's room and observed that whatever etching was left on the bottom of the tub was approximately 6 to 8 inches from the drain leaving enough area unprotected and increasing the foreseeability of a slip and fall." (DelMarva Rep. at 3.) The Court has considered only expert opinions based on evidence relevant to this case in deciding this motion for summary judgment.

## II. STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as

---

2 The Court will rule on all motions in limine from the bench prior to trial.

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3

6

(S.D.W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir.1986)). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

Courts are to hold *pro se* pleadings to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978). However, even *pro se* plaintiffs must "set forth facts sufficient to withstand summary judgment." *Symeonidis v. Paxton Capital Grp., Inc.*, 220 F. Supp. 2d 478, 480, n. 4 (D. Md. 2002).

### III. DISCUSSION

The Greenbrier moves for summary judgment, arguing that it "owed no duty to provide additional safety features for the bathtub." (Def. Mem. at 7.) While the Greenbrier concedes that it "may have owed a duty to properly clean the bathtub," it contends that "there is absolutely no evidence to show that it breached any such duty." (*Id.* at 8.) Ms. McNeilly responds that there are genuine issues of material fact based on the evidence she has produced (Resp. at 1, Document 154),[3] and that the Greenbrier owed a duty of care to her as a hotel guest. (Mem. Resp. at 36.) The Greenbrier replies that the Plaintiff failed to meet her burden of producing

---

3 As noted above, the Plaintiff provided a list of exhibits, but did not actually produce those exhibits. The Court reviewed, and summarized in the factual background section, *supra*, those documents that were available from the docket.

sufficient evidence to make a prima facie showing of negligence. (Reply at 5.) It argues that Ms. McNeilly "has merely made a limited number of unsubstantiated and mostly erroneous factual assertions without any proper citation to affidavits, depositions, or other materials in the record." (*Id.*) Further, the Greenbrier argues, the facts asserted by Ms. McNeilly "do not prove or sufficiently tend to prove that Plaintiff's alleged injuries proximately resulted from any negligence of Defendant." (*Id.*)

The basic elements of a negligence claim are duty, breach of that duty, causation, and damages. "In order to establish a negligence claim in West Virginia, '[a] plaintiff must prove by a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff.'" *Cline v. 7-Eleven, Inc.*, 2012 WL 5471761 (N.D.W. Va. Nov. 9, 2012) (citing *Neely v. Belk, Inc.,* 668 S.E.2d 189, 197 (W.Va.2008)). In determining whether a duty exists, "[t]he ultimate test…is found in the foreseeability that harm may result." Syl. pt. 3, *Hersh v. E-T Enterprises, Ltd. P'ship*, 752 S.E.2d 336, 338 (W. Va. 2013) (explaining that the test is whether "the ordinary man in the defendant's position, knowing what he knew or should have known, [would] anticipate that harm of the general nature of that suffered was likely to result"). Businesses and landowners will not be found liable in negligence unless they "breach their duty of reasonable care under the circumstances." *Crum v. Equity Inns, Inc.*, 685 S.E.2d 219, 226 (W.Va. 2009). "[A] plaintiff must show that a defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff" to establish a prima facie case of negligence. *Id.* Further, the Supreme Court of Appeals of West Virginia noted that:

> In determining whether a defendant in a premises liability case met
> his or her burden of reasonable care under the circumstances to all

> non-trespassing entrants, the trier of fact must consider (1) the foreseeability that an injury might occur; (2) the severity of injury; (3) the time, manner and circumstances under which the injured party entered the premises; (4) the normal or expected use made of the premises; and (5) the magnitude of the burden placed upon the defendant to guard against injury.

Syl. pt. 4, *Hersh*, 752 S.E.2d at 338 (citing Syl. pt. 6, *Mallet v. Pickens*, 522 S.E.2d 436 (W. Va. 1999).

As the Greenbrier notes, the Supreme Court of Appeals of West Virginia does not appear to have considered a factually analogous case raising questions regarding the specific duties owed to hotel guests with respect to bathroom safety features. (Def. Mem. at 11, n. 3.) Other states have come to differing conclusions in similar cases.[4] In *Jones v. Abner*, cited by the Greenbrier, the Kentucky Court of Appeals held that a plaintiff failed to present sufficient evidence of the breach of a duty when she slipped in a bathtub that had been cleaned the day before, had non-slip strips of debated size and age, and lacked a safety rail. 335 S.W.3d 471, 473–476 (2011). The court found that the plaintiff's allegations regarding cleaning methods and the adequacy of the anti-slip strips were speculative and unsupported by the evidence. *Id.* at 475–76. In addition, that court relied in part on the open and obvious nature of the hazard, of which the plaintiff, who had previously showered without incident, should have been aware.[5] *Id.* at 476. In essence, the Kentucky court required the plaintiff to produce evidence of a specific act or omission that (a) breached the applicable standard of care and (b) caused the fall.

---

[4] For an exhaustive overview of cases from all United States jurisdictions addressing the liability of hotel operators for guest injuries sustained in hotel bathrooms, see Thomas R. Trenker, Annotation, *Liability of Hotel or Motel Operator for Injury of Death of Guest or Privy Resulting From Condition in Plumbing or Bathroom of Room or Suite*, 93 A.L.R.3d 253 (originally published 1979). The Court has chosen two recent cases with facts analogous to the case now before the Court to highlight the differing approaches courts have taken.

[5] West Virginia recently abolished the open and obvious doctrine, holding that a plaintiff's failure to exercise reasonable care in the face of an obvious hazard goes to the fact-finder's evaluation of comparative negligence. *See Hersh v. E-T Enterprises, Ltd. Partnership*, 752 S.E.2d 336, 339 (W. Va. 2013).

The Supreme Court of North Dakota came to an opposite conclusion in *Wotzka v. Minndakota Ltd. Partnership*. 831 N.W.2d 722 (N.D. 2013). In that case, the plaintiff claimed that a hotel "maintained a dangerous condition on its premises by failing to equip the shower with a non-skid strip, a bathmat, or a handrail at the shower level" after he slipped and fell out of the shower. *Id.* at 724. The parties were in essential agreement that it was foreseeable that a bathtub could be slippery and dangerous, and that the danger was open and obvious. *Id.* at 729. The court concluded summary judgment was inappropriate because "reasoning minds could reach differing conclusions as to whether Radisson Hotel anticipated the harm and failed to maintain the premises in a reasonable safe manner." *Id.* The North Dakota court, unlike the Kentucky court, permitted a jury to hear the list of potential precautions the hotel could have but did not take, and evaluate whether the hotel met the reasonableness standard. This Court finds the approach taken by the North Dakota court to be more in keeping with the law and precedent regarding negligence in West Virginia.

A careful review of Ms. McNeilly's response to the motion for summary judgment, and of the available documents that she referenced, reveals evidence of several facts that allegedly contributed to or could have prevented her fall. There was no bathmat supplied in the bathroom; the slip-resistant surface on the bathtub was worn and ended about six inches from the tub drain; and the metal grab bar lacked a slip-resistant surface. She makes additional allegations regarding the cleaning methods and the training and supervision of housekeepers. Ms. McNeilly testified that she looked in the bathtub after she returned from the emergency room and believes she observed residue, which she attributes to cleaning chemicals that were not fully rinsed.

The Greenbrier frames the issue in this case as turning on whether it owed a duty to supply a bathmat, install rubber strips beyond the industry-compliant anti-slip surface, warn of the slippery tub/shower, or treat the surface of the bathtub in some manner. However, those specific proposed changes to the Greenbrier's bathroom relate to the element of breach, rather than the element of duty. As a matter of law, the Greenbrier, like all hotels, owes a duty of reasonable care to its patrons, including the duty to provide reasonably safe premises. Whether the measures taken by the Greenbrier suffice to meet the reasonable care standard is a question for the jury and cannot be decided by this Court at this stage. *See, e.g.*, *Bradley v. Sugarwood, Inc.*, 260 S.E.2d 839, 840 (W. Va. 1979) (explaining that questions of negligence are for the jury even if there is no factual dispute, if different conclusions could be drawn from the facts). Though the Greenbrier's expert found the bathtub to be compliant with industry standards, meeting industry standards is not dispositive of the issue of reasonable care in a negligence suit. Further, though much of Ms. McNeilly's evidence related to cleaning methodology is mere speculation,[6] viewing the evidence in the light most favorable to her, a jury could credit her statement that she found residue of cleaning supplies in the bathtub and find that such residue contributed to her fall. As set forth in *Hersh*, the jury, as fact-finder, will be responsible for assessing the factors related to the burden of reasonable care. The Court finds that Ms. McNeilly has referenced sufficient evidence to create a genuine issue of material fact with respect to whether the Greenbrier exercised reasonable care. Whether a hotel operator exercising reasonable care, under the circumstances presented here, would have taken additional precautions to prevent falls in the bathtub is a matter for the jury's determination.

---

6 For example, Ms. McNeilly's evidence that some housekeepers used unapproved cleaning products is not relevant to this case because she has no evidence that such cleaning supplies were used in her room or that the unapproved cleaning supplies contributed to her fall.

11

*CONCLUSION*

Wherefore, after careful consideration and for the reasons stated herein, the Court does hereby **ORDER** that the Defendant *Greenbrier Hotel Corporation's Motion for Summary Judgment* (Document 106) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:   April 25, 2014

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA